# United States District Court
# Central District of California

| | |
|---|---|
| ARNOLDO JARA & MARIA JARA,<br><br>     Plaintiffs,<br><br>  v.<br><br>GC SERVICES LIMITED<br>PARTNERSHIP; AND DOES 1<br>THROUGH 10, INCLUSIVE,<br><br>     Defendant. | Case № 2:17-cv-04598-ODW-RAO<br><br>**ORDER DENYING PLAINTIFFS'<br>MOTION FOR SUMMARY<br>JUDGMENT [29]; AND GRANTING,<br>IN PART, AND DENYING, IN PART,<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT [43]** |

## I. INTRODUCTION

Plaintiffs Arnoldo Jara and Maria Jara, husband and wife, claim that GC Services Limited Partnership harassed them when it engaged in a telephone campaign to collect several debts. The Jaras bring claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788, et seq. GC Services denies that it violated these statutes in its attempts to collect debts from the Jaras on behalf of a creditor bank.

The Jaras move for partial summary judgment on their claim for violation of the TCPA. (Mot., ECF No. 29.) GC Services cross moves for summary judgment on all of the Jaras' claims. For the reasons discussed below, the Court **DENIES** the Jaras'

Motion for Partial Summary Judgment (ECF No. 29,) and **GRANTS, IN PART, AND DENIES, IN PART**, GC Services' Motion.[1]  (ECF No. 38.)

## II.    FACTUAL BACKGROUND

Mrs. Jara incurred debts to Synchrony Bank on three credit card accounts, including JC Penny Rewards Mastercard, Lowe's, and Home Design Furniture.  (Pl's Statement of Gen. Disputes No. 1, ECF No. 53.)  Mr. Jara also incurred a debt to Synchrony Bank for a Lowe's credit card account.  (*Id.* No. 2.)  Mrs. Jara is the only authorized user on her accounts, and Mr. Jara is the only authorized user on his.  (*Id.* Nos. 8–13.)  For all four accounts, the Jaras identified the same contact phone number ending in -1964.  (*Id.* No. 7.)  On their credit applications, the Jaras each consented to being contacted at the -1964 number via an automatic telephone dialing system and/or a prerecorded voice.  (*Id.* Nos. 15, 18, 21, 25.)

Synchrony Bank retained GC Services to collect on all four accounts.  (*Id.* No. 5.)  As part of its debt collection efforts, GC Services called the number ending in -1964, 17 times on February 8, 2017, 12 times on February 9, 2017, and 11 times on February 14, 2017.  (Def.'s Statement of Gen. Disputes Nos. 4–5[2], ECF No. 49; Chami Decl. ¶ 16, Ex. N, ECF No. 32-1.)  In a nine-day period, GC Services called the Jaras 87 times.  (Chami Decl. ¶ 16, Ex. N.)  After February 14, 2017, GC Services called the Jaras 126 times, and, after February 27, 2017, GC Services called an additional 106 times.  (Def.'s Statement of Gen. Disputes No. 9, 15; Chami Decl. ¶ 16, Ex. N.)  GC Services made the calls from 12 different phone numbers, and used an auto-dialer.  (Def.'s Statement of Gen. Disputes Nos. 3, 8, ECF No. 49.)  GC Services never called the Jaras before 8:00 a.m. or after 9:00 p.m.  (Pl.'s Statement of Gen.

---

[1] After carefully considering the papers filed in support of and in opposition to the Motions, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

[2] As noted by GC Services, the Jaras did not number their supporting statements of fact.  GC Services chose to number the facts it added, starting at 16, but did not number the Jaras' preceding facts.  The Court refers to the fact numbers that should have been included by counting backward from GC Services' additional facts, which start at No. 16.  (Def's Statement of Gen. Disputes, ECF No. 49.)

Disputes No. 31, ECF No. 53.)  The parties also agree that GC Services never actually spoke with Mr. Jara at the -1964 number.  (Pl.'s Statement of Gen. Disputes, No. 27.)  On some occasions, however, GC Services called intending to speak with Mr. Jara, but then pursued collecting Mrs. Jara's debts when she told the representative that Mr. Jara was not available.  (Pl.'s Statement of Gen. Disputes No. 29.)

As set forth in the timeline below, the Jaras contend that Mrs. Jara revoked consent to be called regarding all debts on her accounts, and Mr. Jara's account.  GC Services responds that it called regarding specific accounts, and stopped its collection efforts *with respect to each particular account* after Mrs. Jara requested it.

| Date | Account Identified by GC Services | Response | Source |
|------|-----------------------------------|----------|--------|
| 2.14.17[3] | JC Penny Mastercard | **Mrs. Jara**: "I don't have money to pay.  But as soon as I get better, I'd gladly pay you. … *I would really want you to stop calling me and as soon – about my debts*.  And I would call you back when I have money to pay you"<br>**GC Rep**: "Then you are telling | Pl.'s Statement of Gen. Disputes, No. 17; Chami Decl., ¶ 6, Ex. D (emphasis added). |

---

[3] Defense counsel attaches the same transcripts of conversations between a GC Services Representative and Mrs. Jara, but identifies the conversations as taking place on February 14, 2018, and February 17, 2018. (Nefulda Decl. ¶¶ 5–8, Exs. 4–8, ECF No.43-1.)  The Court construes these as typographical errors because, despite the transcriptions not being dated, all other references to these conversations identify the year as 2017.  (*See, e.g.*, Opp'n to Pl.'s Mot. Summ. J. 8, ECF No. 48.)   Equally concerning is that there appear to be multiple versions translating the same conversation attached to Plaintiffs' counsel's declaration.  *Compare* Chami Decl. ¶ 6, Ex. D, *with* Chami Decl. ¶ 12, Ex. J.  It is extremely difficult to tell from the documents whether they represent different conversations or just different translations because there are only slight variations in the translations.  *See id.*  Further complicating the situation, the transcripts bear different bates numbers.  The Court is astounded by the lack of professionalism, and general sloppiness demonstrated in the pleadings of both parties.

| Date | Account Identified by GC Services | Response | Source |
|------|-----------------------------------|----------|--------|
| | | me that you don't want us to call you on this number?" **Mrs. Jara**: "Yes." **GC Rep**: "Not today, not tomorrow, never. You don't want us to call you ever again on this number[?]" **Mrs. Jara**: "No." | |
| 2.17.17 | Lowe's (the caller first asked for *Mr. Jara*) | No revocation. | Chami Decl. ¶ 7, Ex. E. |
| 2.27.17 | Lowe's (the caller first asked for *Mr. Jara*) | **Mrs. Jara**: "…I'm very stressed, I would really want that you stop calling me about the *debts* I have with you. I will call you when I have the money." "I just ask that you stop calling me please." **GC Rep**: "I'll make a note on the system. I can't make any promises. [unintelligible] is an automated system, but – [END OF AUDIO]." | Chami Decl. ¶ 8, Ex. F (emphasis added). |
| Undated | Lowe's | **Mrs. Jara**: "Miss, look, I'm | Chami Decl. ¶ 9, |

| Date | Account Identified by GC Services | Response | Source |
|------|-----------------------------------|----------|--------|
| | | not currently able to pay. … I would really like you to stop calling me about my *accounts*." **GC Rep**: "Are you asking us to stop calling you?" **Mrs. Jara**: "Yes." | Ex. G (emphasis added). |

The Jaras claim that GC Services violated the TCPA, FDCPA, and RDFCPA by calling them after they revoked consent to be contacted via an automatic dialing device, and with the intent to harass and annoy.

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence files in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV.  DISCUSSION

### A.  TCPA Claims

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) (citation omitted).

The Jaras consented to their creditors calling them using an automatic telephone dialing system and/or prerecorded voice when they signed their credit agreements with Synchrony Bank. (Pl.'s Statement of Gen. Disputes, No. 4, ECF No. 53.) Thus, the parties agree that the only disputed element is whether the Jaras *revoked* their consent to allow their creditor to use an automatic telephone dialing system to collect debts. (Opp'n to Pl.'s Mot. Summ. J. 7, ECF No. 48; Pl.'s Statement of Gen. Disputes, No. 4, ECF No. 53.) Consumers may revoke their consent, orally or in writing, to be contacted under the TCPA, but "[r]evocation of consent must be clearly made and [the consumer] must express a desire not to be called…." *Van Patten*, 847 F.3d at 1047–48; *see also ACA Int'l v. Fed. Commc'n Comm'n*, 885 F.3d 687, 692 (D.C. Cir. 2018). The Court's analysis for Mrs. Jara is slightly different than the analysis for Mr. Jara.

### 1. Mrs. Jara's JC Penny, Home Design Furniture, and Lowe's Accounts

Mrs. Jara was the sole authorized user on her JC Penny, Home Design Furniture, and Lowe's credit accounts. (Pl.'s Statement of Gen. Disputes, No. 8.) GC Services argues that each time it called Mrs. Jara it was calling about a different account, and that each time she revoked consent for a specific account, it stopped calling about *that account*. (Opp'n to Pl.'s Mot. Summ. J. 7–9.) In response, Mrs. Jara contends that she revoked consent for *all accounts* when GC Services called her on several occasions.

On February 14, 2017, GC Services called and identified itself as collecting a debt on Mrs. Jara's JC Penny Mastercard account. (Pl.'s Statement of Gen. Disputes, No. 17; Chami Decl., ¶ 6, Ex. D.) After discussing her inability to pay, Mrs. Jara told the representative that she "would really want [GC Services] to stop calling [her] and as soon – about my *debts*." (*Id.* (emphasis added).) GC Services confirmed by asking: "Not today, not tomorrow, never. You don't want us to call you ever again on this number[?]" (*Id.*) Mrs. Jara confirmed this was the case. (*Id.*) A similar colloquy occurred on February 27, 2017, when GC Services first identified Mrs. Jara's Lowe's

account. (Pl.'s Statement of Gen. Disputes, No. 30; Chami Decl. ¶ 8, Ex. F (emphasis added) ("I would really want that you stop calling me about the *debts* I have with you.").) The Jaras also attach an undated transcript where GC Services identified a Lowe's account, and Mrs. Jara says, "I would really like you to stop calling me about my *accounts*." (Chami Decl. ¶ 9, Ex. G (emphasis added).)

"Importantly, 'a factual dispute regarding alleged revocation of consent cannot be properly resolved on summary judgment.'" *Herrera v. First Nat. Bank of Omaha, N.A.*, No. 2:17-cv-01136-TSWL-SKA, 2017 WL 6001718, at *4 (C.D. Cal. Dec. 4, 2017) (quoting *Walker v. Transworld Sys.*, No. 8:14-cv-588-T-30MAP, 2014 WL 7225212, at *3 (M.D. Fla. Dec. 17, 2014)). "[C]onsent is terminated when the [person who obtained consent] knows or has reason to know that the other is no longer willing for him to continue the particular conduct." *Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 3456680, at *3 (N.D. Cal. June 24, 2016) (quoting *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014)). A reasonable jury could construe Mrs. Jara's directive to stop calling her about her "accounts," and "debts" on several occasions as her revoking her consent with respect to all of her outstanding accounts. *See Osorio*, 746 F.3d at 1256 (finding disputed issue of fact where consumer claimed to have revoked consent, and creditor denied revocation); *Dixon*, 2016 WL 3456680, at *3–4 (holding triable issue of fact regarding consent where consumer stated, "I asked you guys not to call me and you can contact my attorney.").

Here, the GC Services representative, confirmed, on at least one occasion, that Mrs. Jara never wanted GC Services to call her again on the number she provided. (Pl.'s Statement of Gen. Disputes, No. 17; Chami Decl., ¶ 6, Ex. D.) This evidence is sufficient for a reasonable jury to find that GC Services "knew or ha[d] reason to know that [Mrs. Jara] [was] no longer willing" to receive calls on any of her accounts. *See Dixon*, 2016 WL 3456680, at *3. Her references to "debts" and "accounts" combined with her request that GC Services stop calling her create issues of fact

regarding whether she revoked consent for all three of her accounts. *See Herrera*, 2017 WL 6001718, at *4 (collecting cases denying summary judgment where fact issue existed regarding revoking consent); *Zondlo v. Allied Interstate, LLC*, 290 F. Supp. 3d 296, 305 (M.D. Penn. 2018) (holding that fact issue precluded summary judgment where consumer arguably revoked consent as to one account, but it was unclear whether consumer revoked for remaining accounts being collected by same debt collector). The Court **DENIES** both parties' Motions to the extent they seek summary adjudication of Mrs. Jara's TCPA claim.

### 2. *Mr. Jara's Lowe's Account*

Mr. Jara was the sole authorized user of his Lowe's account, and consented to be contacted on the same telephone number provided for Mrs. Jara's accounts, but never spoke with GC Services. (Pl.'s Statement of Gen. Disputes, Nos. 5, 7, 12, 13, 27.) Mr. Jara contends that his wife revoked consent on his behalf when she spoke to GC Services, as described above. (Pl.'s Opp'n to Mot. for Summ. J. 10–11, ECF No. 52.) The TCPA does not address whether a person's husband or wife can revoke consent on their behalf, but courts have looked to the common law of consent in interpreting the scope of the TCPA. *See, e.g.*, *Osorio*, 746 F.3d at 1252–53.

To support Mr. Jara's position, he cites *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011). In *Gutierrez*, the district court held that a husband had "common authority" over his wife's cellular phone, such that he could give "prior express consent" to be contacted, as used in the TCPA. *Id.* The *Gutierrez* court analogized to Supreme Court precedent in the criminal context allowing officers to search an area where a third party has common authority over the area sufficient to provide consent. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)). The court did not address whether this reasoning would also apply to *revoking* consent. *See id.*

Mr. Jara also cites *Target National Bank v. Welch*, where the district court issued an opinion on appeal from a bankruptcy court's order. No. 8:15-cv-614-T-36,

2016 WL 1157043, at *2 (M.D. Fla. Mar. 24, 2016). The court concluded, without much analysis, that a husband could revoke his wife's prior express written consent because they were agents for each other. *Id.* at *5 ("If Mr. Ward were acting as Ms. Ward's agent for the purpose of reaching her at that cellular telephone number, then it logically follows that he certainly could revoke Ms. Ward's prior express consent to be called at that number."). On this finding, the district court affirmed the bankruptcy court's ruling. *Id.* at *6.

GC Services does not provide any contrary authority to support its position that Mrs. Jara could not revoke her husband's consent to be called on their shared number; instead, it distinguishes *Target* and *Gutierrez*. *Gutierrez* is not applicable, GC Services argues, because it only addressed whether a spouse could give prior express consent, not whether a spouse could revoke consent. (Def.'s Reply 3, ECF No. 56.) This is true. However, the reasoning the court employed in finding that a spouse with common authority over a phone could provide consent applies equally to revoking consent. *See Gutierrez*, 2011 WL 579238, at *3; *c.f. Zondlo*, 290 F. Supp. 3d at 305. It would be logically inconsistent to allow the spouse authority for one, but not the other.

Mr. Jara declares: "I know that when [GC Services] called us, [GC Services] sometimes wanted to speak to [Mrs. Jara], and sometimes [GC Services] wanted to speak with me. Because my wife is with the phone more often, she is completely free to speak for me when talking to GC Services." (Arnoldo Jara Decl. ¶¶ 6–7, ECF No. 31.) He also claims that he would have communicated the same things had GC Services reached him. (*Id.* ¶ 8.) Whether Mr. Jara's testimony is sufficient to establish Mrs. Jara as his agent for purposes of revoking consent is a question for the jury. *See Osorio*, 746 F.3d at 1253–54 (holding question of fact where housemate may have given authority to cohabitant to consent to calling shared phone number); *see also Gutierrez*, 2011 WL 579238, at *3.

On some of the occasions GC Services called, it initially requested to speak with Mr. Jara, and then pivoted when Mrs. Jara explained that he was away. The jury could interpret these facts to show Mrs. Jara revoked consent for Mr. Jara's account because GC Services initially placed the call intending to reach Mr. Jara. Accordingly, the Court **DENIES** both parties' motions for summary judgment with respect to Mr. Jara's TCPA claim because there remain factual disputes regarding whether Mrs. Jara acted as Mr. Jara's agent in revoking consent.

**B.    FDCPA & RDCPA Claims**

The Jaras have claims under various provisions of the FDCPA, which the Court addresses in turn.

*1.    Section 1692d*

Section 1692d prevents debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. One of the proscribed acts enumerated is "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* §1962d(5).

"[C]laims under §1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1226 (E.D. Cal. 2010) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)). Courts look to the frequency, duration, and pattern of calls when evaluating whether a debt collector acted with intent to harass, oppress, or abuse. *See, e.g.*, *Jones v. Rash Curtis & Assocs.*, No. C 10–00225 JSW, 2011 WL 2050195, at *2 (N.D. Cal. Jan. 3, 2011) (collecting cases). It is undisputed that GC Services called the Jaras' shared cell phone from several different phone numbers, including: 17 times between 8:18 a.m. and 6:50 p.m., on February 8, 2017; 12 times between 9:44 a.m. and 6:55 p.m., on February 9, 2017; 126 times "after the February 14 call;" and 106 additional

times "[a]fter the phone call that occurred on February 27, 2017." (Def.'s Statement of Gen. Disputes & Mat. Facts at 2–4.)

GC Services argues that these facts are not sufficient to raise triable issues because: 1) the calls concerned different accounts; and 2) they were not so excessive as to exhibit an intent to harass. GC Services relies on *Hinderstein v. Advanced Call Center Technologies*, where, after a bench trial, the court found that the defendant had not breached the FDCPA because there were no facts establishing an intent to harass or annoy. No. CV 15–10017-DTB, 2017 WL 751420, at \*5 (C.D. Cal. Feb. 27, 2017). However, the facts in *Hinderstein* were starkly different from those presented here. There, the defendant called the plaintiff 49 times in an 18-day period, always between 8:00 a.m. and 9:00 p.m., always with at least 90 minutes between calls, never more than five times a day, and never made any calls to the plaintiff's work, family, or friends. *Id.* GC Services also latches onto the *Hinderstein* court's finding that after the plaintiff requested the defendant to stop calling, the defendant immediately stopped calling him. *Id.*

Unlike *Hinderstein* where the Court was acting as the finder of fact, here, the Court is not entitled to weigh the evidence. *See Addisu*, 198 F.3d at 1134. The Jaras present evidence that a reasonable juror could find exhibits the intent to annoy or harass. GC Services called the number on the Jaras' credit application 87 times in a nine-day period, almost twice as many calls in half the time compared to *Hinderstein*. (Chami Decl. ¶ 16, Ex. N.) Mrs. Jara requested that GC Services stop calling on her "accounts" and "debts," but GC Service continued to call. (Chami Decl., ¶ 6, 8, Exs. D, F.) GC Services would call asking for Mr. Jara, and then switch gears when he was not available to try and collect Mrs. Jara's debts. (Chami Decl. ¶¶ 7–8, Exs. E–F.) Sometimes GC Services would call Mrs. Jara with as little as 30 minutes between calls. (*See* Sherman Decl., Exs. 1–5.)

GC Services claims that it stopped calling after Mrs. Jara revoked consent for each particular account. However, the fact remains that it would continue to call the

same number after Mrs. Jara requested that it stop calling regarding "debts" and "accounts." GC Services also confirmed that Mrs. Jara never wanted to be contacted again on the -1964 number. (Pl.'s Statement of Gen Disputes, No. 17; Chami Decl., ¶ 6, Ex. D.) Whether GC Services' disregard of those requests is sufficient to exhibit an intent to harass is for the jury to determine. *See Schwartz-Earp v. Advanced Call Ctr. Techs., LLC*, No. 15-cv-1582-MEJ, 2016 WL 899149, at *4 (N.D. Cal. Mar. 9, 2016) (collecting cases denying summary judgment where call volume and pattern raised issue of fact regarding defendant's intent to annoy or harass); *see also Bennett v. Portfolio Recovery Assocs., LLC*, No. CV 12–09827 DSF (AGRx), 2013 WL 6320851, at *3 (C.D. Cal. Nov. 22, 2013) (denying summary judgment where collector called plaintiff's number twice in one day on twenty occasions and three times in one day on eight occasions). Accordingly, the Court **DENIES** GC Services' Motion for Summary Judgment regarding the Jaras' claims under Section 1692d.

> ## 2. *Section 1692f*

The Jaras also claim GC Services violated Section 1962f by using "unfair or unconscionable means to collect or attempt to collect…a debt." Section 1692f provides eight nonexhaustive examples of conduct that constitute unfair or unconscionable means, including, for example, accepting post-dated checks, or collecting interest that is not due and owing. 15 U.S.C. § 1962f. The Jaras do not provide any evidence that would bring GC Services' actions under the guise of Section 1962f. In fact, they do not even substantively oppose GC Services' arguments in their Opposition. (*See* Pl.'s Opp'n 12 (mentioning section 1962f only once).) Failure to oppose an argument is sufficient grounds to grant GC Services' summary judgment on this claim. *See, e.g.*, *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 305 (D. Conn. 2009) (quotation omitted) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Furthermore, the Jaras submit no evidence that GC Services' conduct was in anyway

comparable to the conduct described in Section 1962f. *Schwartz-Earp*, 2016 WL 899149, at *5 (citing *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1519 (9th Cir. 1994)) (granting summary judgment where no evidence of similar conduct). Accordingly, the Court **GRANTS** GC Services' Motion to the extent it seeks dismissal of the Jaras' Section 1962f claim.

### 3. *RDFCPA*

"Like the FDCPA, the purpose of the Rosenthal Act is 'to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.'" *Id.* at *6 (citing Cal. Civ. Code § 1788.1(b)). The RDFCPA incorporates the requirements of the FDCPA, and makes available its remedies. *See Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). Where a debt collector violates the FDCPA, they also violate the RDFCPA. *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009). Because the Jaras provided sufficient evidence to defeat summary judgment on their FDCPA claim, their claim under the RDFCPA survives for the same reasons. *See id.* Accordingly, the Court **DENIES** GC Services' Motion to the extent it seeks partial summary judgment on this claim.

///
///
///
///
///
///
///
///
///
///

# V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 29), and **GRANTS, IN PART**, and, **DENIES, IN PART**, Defendant's Motion for Summary Judgment.  (ECF No. 43.)

**IT IS SO ORDERED.**

May 17, 2018

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**